IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00081-PAB-KAS

CHRISTOPHER J. CORDOVA,

    Plaintiff,

v.

TRISHA KAUTZ,
GREG CARWIN,
VICKIE NIRA,
JEREMY LONG, and
NICHOLE WHITE,

    Defendants.

---

### CDOC DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)[1]

Defendants Trisha Kautz, Greg Carwin, Vickie Nira, and Nicole White (collectively, the "CDOC Defendants"),[2] through the Colorado Attorney General, respectfully submit this motion to dismiss Plaintiff Christopher Cordova's Amended Complaint at ECF No. 13, and states in support:

### CERTIFICATE OF CONFERRAL

Because Mr. Cordova is an unrepresented prisoner, undersigned counsel is not required to confer with him before filing this motion. *See* D.C.COLO.LCivR 7.1(b)(1).

---

[1] CDOC Defendants previously filed a motion for leave to exceed the 15-page limitations found in Civ. Practice Standard III(A), which motion is still pending. *See* ECF No. 29.

[2] Defendant Long is not a CDOC employee and so is not represented by the Attorney General's Office in this matter. ECF No. 25.

## INTRODUCTION

Mr. Cordova is a *pro se* inmate incarcerated in the Colorado Department of Corrections ("CDOC"), currently housed at Sterling Correctional Facility ("SCF"). Mr. Cordova brings this 42 U.S.C. § 1983 action alleging that the CDOC Defendants failed to provide timely medical care regarding an alleged hernia. *See generally* ECF No. 13. Specifically, Mr. Cordova alleges he suffered a groin pull in June of 2020 while working for the prison industry shop. *Id.* at ¶ 6. Mr. Cordova alleges he was not provided medical attention immediately after the incident. *Id.* at ¶ 7. He then sent several medical kites[3] to be seen for lower abdomen and groin pain from August 2020 through March 2021. *Id.* at ¶¶ 9-11, 13. While Mr. Cordova was seen by Defendant Kautz on August 15, 2020, a few days after his first medical kite, he alleges that she inappropriately examined him. *Id.* at ¶ 10. He does not provide details about why he believes this examination was inadequate.

Defendant Nira scheduled Mr. Cordova for an appointment with an outside consultant, Banner Health of Sterling, which occurred on April 21, 2021. *Id.* at ¶ 14. Mr. Cordova alleges that Banner Health also failed to complete an adequate examination and subsequently misdiagnosed him. *Id.* at ¶¶ 15-16. After the alleged misdiagnosis, Mr. Cordova sent additional medical kites complaining about his lower abdomen and groin pain. *Id.* at ¶ 18. Defendant Nira informed him he needed to follow up with the outside consultant. *Id.* Mr. Cordova was seen by

---

[3] A "kite" is the term commonly used for a written note prisoners use to communicate needs or request services from CDOC. A medical kite is used to request medical services.

Defendant Long in October of 2021. *Id.* at ¶ 19. Defendant Long allegedly told Cordova there was nothing that could be done for his complaints. *Id.*

Mr. Cordova continued to send medical kites asking to see outside medical consultants and he was eventually seen again at Banner Health on January 6, 2022. *Id.* at ¶¶ 20-21. This second Banner doctor allegedly informed Mr. Cordova that his condition required emergency surgery, but he first needed an MRI scan. *Id.* at ¶ 22. Mr. Cordova alleges he never received the MRI and that he was told by CDOC that they were waiting for a surgeon's referral before anything else could be done. *Id.* at ¶ 23.

Based on the above, Mr. Cordova claims he continues to suffer from pain, numbness, permanent organ damage, and a substantial risk of death. *Id.* at ¶¶ 4, 25. He is suing the CDOC Defendants for the following actions and/or omissions:

- Defendant Kautz for failing to have him transferred to a medical center based on his medical kites and proclaimed medical emergencies. *Id.* at ¶ 48.

- Defendant Carwin for failing to provide any type of emergency medical attention when he suffered an on-the-job emergency and failing to ensure he received proper medical care. *Id.* at ¶ 43.

- Defendant Nira for delaying and denying Mr. Cordova medical treatment and surgery. *Id.* at ¶ 54.

- Defendant White for failing to schedule Mr. Cordova medical appointments, failing to take reasonable measures to get him medical care, and failing to act or intervene to have him seen by medical personnel. *Id.* at ¶ 50.

Mr. Cordova seeks an injunction ordering the CDOC Defendants to have him treated by outside medical providers, to properly train CDOC staff, and to implement policies to ensure inmates receive prompt and proper medical treatment. *Id.* at pp. 24-25 (Section G). He also seeks monetary damages. *Id.*

Mr. Cordova's claims against the CDOC Defendants should be dismissed for several reasons. First, his claims are barred by the statute of limitations. Second, he fails to allege sufficient facts from which the Court can infer that the CDOC Defendants consciously disregarded a substantial risk to his health and safety. Third, he fails to allege that Defendant White personally participated in any violation of his rights, so his claim against her should be dismissed for this additional reason. Finally, the CDOC Defendants are entitled to qualified immunity.

## STANDARD OF REVIEW

A court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). While detailed factual allegations are not required, a plaintiff must assert "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Courts must construe *pro se* complaints liberally. *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). But the Court has no duty to assume the role of advocate for a *pro se* plaintiff, nor should it supply additional facts or construct a legal theory for the plaintiff. *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998).

## ARGUMENT

**I.     Mr. Cordova's claims are untimely because he did not bring this action until after the statute of limitations expired.**

Mr. Cordova's claims are untimely because this action was brought over two years after his alleged injury. 42 U.S.C. § 1983 claims brought in Colorado are governed by the two-year statute of limitations contained in C.R.S. § 13-80-102. *Ervin v. Wilson,* No. 12-cv-02602-PAB-MEH, 2014 WL 7927494 at *6 (D. Colo. Aug. 13, 2014) (citing *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994)); *Merrigan v. Affiliated Bankshares of Colo., Inc.*, 775 F. Supp. 1408, 1411-12 (D. Colo. 1991) *report and recommendation adopted in part sub nom. Ervin v. Health Servs. Adm'r Keller,* No. 12-cv-02602-PAB-MEH, 2015 WL 847475 (D. Colo. Feb. 25, 2015). Mr. Cordova brought this action over two years after his claims accrued. Thus, this action is time barred and should be dismissed.

**A.     Mr. Cordova did not initiate this action until over two years after his claims accrued.**

Mr. Cordova did not initiate this action until over two years after his claims accrued. Section 1983 claims accrue, for purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Because Mr. Cordova brings a claim that he was denied or delayed medical care, his cause of action accrued at the time he was allegedly denied medical treatment.

5

*See Pensel v. Bryan*, 972 F.2d 1341, at *1 (9th Cir. 1991) (Table). Mr. Cordova alleges that his initial injury occurred in June of 2020 and that he was not provided immediate medical attention, nor was he provided adequate medical care after he sent medical kites in August of 2020. ECF No. 13, ¶¶ 6-7, 10-11. Therefore, Mr. Cordova arguably has two accrual dates; the first in June 2020 when he was not provided immediate medical care for his on-the-job injury, and the second in August 2020 when he allegedly did not receive adequate medical care in response to his kites.[4] As set forth above, there is a two-year statute of limitations which applies to federal civil rights actions such as this case. *Ervin v. Wilson,* 2014 WL 7927494 at *6. Based on the aforementioned accrual dates, the latest Mr. Cordova could have brought this action was June 2022 for claims related to his initial on-the-job injury, or August of 2022 for claims related to the denial of his medical kites. But Mr. Cordova did not file this action until January 9, 2023. *See* ECF No. 1. Therefore, this action was filed well outside the applicable statute of limitations, and so the Amended Complaint should be dismissed.

      **B.    Mr. Cordova cannot invoke the continuing violation doctrine because he alleges a continuing injury, not a continuing violation.**

Mr. Cordova cannot rely on the continuing violation doctrine to try and salvage his untimely claims because he merely alleges a continuing injury, which does not extend the statute of limitation for his claims. CDOC Defendants presume that Mr. Cordova seeks to invoke the

---

[4] Mr. Cordova presumably was aware of this statute of limitations as he initially filed a lawsuit with these claims on July 22, 2022, which would have been within the limitation period for an alleged denial of medical care claim that accrued in August of 2020. *See* Case No. 1:22-cv-01832-LTB-GPG, ECF. No. 1. This case was ultimately dismissed for failure to comply with the pleading requirements of Rule 8. *Id.* at ECF No. 16.

6

continuing violation doctrine to claim each alleged denial of medical care is a separate cause of action. However, Mr. Cordova fails to distinguish any of his subsequent alleged denials of medical care from his initial injury in June of 2020, or the denial of his initial medical kites in August of 2020. And because any claims arising from these initial injuries are outside the limitation period, any alleged denial of medical care related to these injuries are likewise untimely.

The Tenth Circuit recently acknowledged that a plaintiff may rely on the continuing violation doctrine to toll the statute of limitations in a § 1983 action. *Herrera v. City of Espanola*, 32 F.4th 980, 997 (10th Cir. 2022). However, *Herrera* makes the important distinction between a continuing violation, which tolls the statute of limitations, and a single violation that causes a continuing injury, which does not. *Id.* at 1000. Prior to *Herrera*, the Tenth Circuit has assumed for the sake of argument that the continuing violation doctrine applied to § 1983 cases and those cases also provide direction on the difference between a continuing violation and a continuing injury. *See, e.g., Vazquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018); *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017); *Parker v. Bourdon*, 800 F. App'x 654, 657 (10th Cir. 2020).

A tort is considered "continuing" only if the defendant's conduct is ongoing. *See Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011). That means the continuing violation doctrine does not extend the limitations period when someone merely suffers continuing *injury* from a defendant's action. *See Vazquez*, 882 F.3d at 1277 ("the continuing violation 'doctrine is triggered by continuing unlawful acts but not by continuing damages from the initial violation'") (quoting *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017)); see also *Pike v. City of Mission*, 731 F.2d 655, 660 (10th Cir. 1984) ("a plaintiff may not use the continuing violation

7

theory to challenge discrete actions that occurred outside the limitations period even though the impact of the acts continues to be felt") *overruled in part on other grounds as recognized by Canfield v. Douglas Cty.,* 619 Fed. App'x 774 (10th Cir. 2015).

It then becomes crucial, when deciding a limitation defense involving a continuing violation argument, for courts to distinguish between a violation that occurs over an extended period of time, and one that occurs at a single, discrete instance, but then has lingering harm that reaches out over a longer period. In the context of a denial of medical care claim, the inquiry becomes whether each subsequent denial of medical care can be distinguished from the initial denial of medical care. *See Pensel*, 972 F.2d at 1341 (citing *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987) (in civil rights action alleging conspiracy, separate cause of action runs from each overt act alleged to have damaged plaintiff). Under this inquiry, Mr. Cordova fails to distinguish any alleged denial of medical care from his initial June 2020 injury and August 2020 initial medical kites.

While Mr. Cordova brings claims against the CDOC Defendants for alleged denials of medical care that occurred on different dates, they all relate back to his June 2020 injury. Mr. Cordova claims that Defendant Carwin failed to ensure he received adequate medical treatment on the day of his injury in June 2020. ECF No. 13, ¶¶ 6-7, 43. Similarly, his claim against Defendant White is based on the conclusory allegation that she failed to immediately schedule him for medical care or an MRI after his June 2020 injury. *Id.* at ¶ 52. Because he did not bring this lawsuit against Defendants Carwin or White until January 9, 2023, approximately 7 months after the limitation period expired, these claims are clearly outside the statute of limitations and should be dismissed.

Mr. Cordova's claims against Defendants Kautz and Nira are likewise barred by the statute of limitations. He claims that Defendant Kautz misdiagnosed him or denied him appropriate medical care on four separate occasions from August 15, 2020 through November 28, 2021. *Id.* at ¶¶ 10-11, 13, 20. He also alleges that Defendant Nira did not act quickly enough to provide him with a second opinion after he was seen by an outside consultant on June 10, 2021. *Id.* at ¶ 18. But Mr. Cordova himself admits that all these alleged denials arise from, and relate back to, the occurrence of his June 2020 injury and August 2020 medical kites. *See id.* at ¶ 4 (alleging a reckless disregard for his medical need from 2020 to present); *see also id.* at ¶¶ 5-6 (claiming the "genesis" of his claim is the June 2020 injury). Therefore, Mr. Cordova has not alleged that he is suffering a continuing violation of his Eighth Amendment rights, but merely is claiming a continuous injury — the denial of adequate medical care — that stems from his June 2020 injury. Likewise, any subsequent denial of medical care from any Defendant is a continuation of the initial August 2020 denial of his medical kite. Therefore, these subsequent denials cannot be distinguished from the initial denial of medical care in June 2020 and August 2020 for purposes of the statute of limitations. *See Pensel*, 972 F.2d at 1341.

Additionally, while Mr. Cordova alleges that Defendant Kautz denied him medical care through November 28, 2021, he was aware on August 15, 2020 that Defendant Kautz was denying him the medical care he requested. To allow Mr. Cordova to continually renew his statute of limitations merely by sending another kite for the same medical request goes against controlling case law that his claim accrues when he was aware of his injury, not every time he reports his injury. *Hunt v. Bennett*, 17 F.3d at 1266. And because a continued injury is not

9

enough to establish a continuing violation for purposes of tolling the statute of limitations, Mr. Cordova's claims are untimely. Therefore, this action should be dismissed as time barred.

## II.     Mr. Cordova fails to allege a deliberate indifference claim because he received adequate medical care after he submitted medical kites alerting CDOC of his injury.

Mr. Cordova fails to allege an Eighth Amendment claim for deliberate indifference because he received adequate medical care and simply disagrees with the medical judgment of his providers. The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a cognizable medical claim pursuant to 42 U.S.C. §1983, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. The Supreme Court has made it clear that deliberate indifference "describes a state of mind more blameworthy than negligence," and requires proof of "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835.

The deliberate indifference standard includes both an objective and subjective component. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). First, a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious." *Farmer,* 511 U.S. at 834. A medical need can be sufficiently serious if a physician has made a diagnosis mandating treatment or if the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). The purpose of the requirement is to limit claims to significant, as opposed to trivial, suffering. *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

Additionally, a delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm. *See Olson v. Stotts*, 9 F 3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Delays that have been found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate a prisoner's medical problems. *See Hunt*, 199 F.3d at 1224 (citing *Hill*, 40 F.3d at 1187-88 & n.21(collecting cases)). Officials may also be liable when the delay results in a lifelong handicap, permanent loss, or considerable pain. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (internal citations omitted).

The subjective component of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. *See Mata*, 427 F.3d. at 751; *see also Farmer*, 511 U.S. at 834 (to violate the Eighth Amendment, a prison official must have a "sufficiently culpable state of mind"). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer*, 511 U.S. at 837; *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) ("The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm.").

Even assuming *arguendo* Mr. Cordova's medical needs may be seen as sufficiently serious for purposes of this Motion, he fails to satisfy the subjective prong of a deliberate

indifference claim because there are no factual allegations in the Amended Complaint to suggest that the CDOC Defendants knew of and consciously disregarded a sufficiently serious medical condition. Indeed, Mr. Cordova admits that CDOC Defendants regularly responded to his medical kites complaining about his groin and lower abdomen pain and provided him with medical treatment on multiple occasions, including care by an outside consultant. On August 13, 2020, Mr. Cordova sent his first medical kite, and he was seen two days later by Defendant Kautz. ECF No. 13, ¶¶ 9-10. He was also subsequently seen by an outside medical consultant. *Id.* at ¶¶ 14-15. Moreover, after he disagreed with the outside consultant, Defendant Nira responded to a medical kite advising him on next steps. *Id.* at ¶18. He then received a follow-up outside consultation. *Id.* at ¶ 21. And, in response to another kite, medical staff have informed Mr. Cordova that they are awaiting a surgeon's referral. *Id.* at ¶ 23.

Mr. Cordova claims his treatments were inadequate because he was inappropriately examined and misdiagnosed by both Defendant Kautz and his outside medical consultant. *Id.* at ¶¶ 10, 14-15.[5] But such characterizations are insufficient to state an Eighth Amendment claim because when a prisoner does receive medical care, he has no Eighth Amendment claim based merely on his disagreement with the nature of the diagnosis. *Alloway v. Wackenhut Correctional Facility*, 15 Fed. App'x 743, 744 (10th Cir. 2001) (citing *Ledoux v. Davies*, 961 F.2d 1536, 1537

---

[5] Mr. Cordova does not explicitly allege that Kautz's alleged "inappropriate" examination in August of 2020, by itself, violated the Eighth Amendment. However, even if he did allege such a claim it would fail because "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Self*, 439 F.3d at 1233 (10th Cir. 2006) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)).

(10th Cir. 1992)). Because Mr. Cordova regularly received responses to his request for medical care, he fails to allege that the CDOC Defendants were deliberately indifferent to any alleged medical condition. The fact that Mr. Cordova admits that the CDOC Defendants sent him a considerable volume of responses and otherwise addressed his medical needs directly undercuts any allegation that his medical condition was consciously disregarded. On the contrary, the CDOC Defendants demonstrated that they intentionally acknowledged Mr. Cordova's concerns on multiple occasions, and he merely did not like the response.

Mr. Cordova then tries to allege that CDOC Defendants were deliberately indifferent because they failed to listen to him when he claimed that his providers were wrong about his medical condition, and he needed to be seen by yet another provider. *Id.* at ¶¶ 18-20. But these allegations essentially argue with the medical judgment of his providers and do not rise to an Eighth Amendment violation. *See Ledoux*, 961 F.2d at 1537 (citing *Estelle,* 429 U.S. at 107) ("matter[s] of medical judgment" do not give rise to § 1983 claim); *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), *cert. denied,* 450 U.S. 1041 (1981); *Smart v. Villar,* 547 F.2d 112, 114 (10th Cir.1976) (same). Even assuming Mr. Cordova was misdiagnosed by his providers, these allegations would still not establish that the CDOC Defendants violated the Eighth Amendment when they reasonably relied on the providers' instructions and diagnosis. *See Bond v. Aguinaldo,* 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals."); *Anglin v. City of Aspen*, 552 F. Supp. 2d 1205, 1225 n.4

13

(D. Colo. 2008) ("As a non-medical professional, a reasonable law enforcement officer cannot be expected to question the judgment of qualified medical professional absent some extraordinary circumstances.").

Additionally, to the extent Mr. Cordova's claim is premised on allegations that he did not receive a response to some medical kites (*e.g.,* ECF No. 13, ¶¶ 11-13, 22), Mr. Cordova fails to allege facts to show that any of these CDOC Defendants actually received these kites and consciously disregarded them. Instead, he relies on the conclusory allegations that because he sent the medical kites and did not receive the response he wanted, then CDOC Defendants (as opposed to any other individuals who could have been responsible for reviewing and responding to such communications) must have consciously disregarded the kites. Such conclusory allegations are not sufficient to state an Eighth Amendment claim. *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (A complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (citing *Twombly*, 550 U.S. at 555, 557).

Therefore, Mr. Cordova fails to allege that any of the CDOC Defendants were deliberately indifferent to a serious medical need and the Amended Complaint should be dismissed.

### III. Defendant White did not personally participate in a deprivation of Mr. Cordova's constitutional rights.

Mr. Cordova fails to allege that Defendant White personally participated in a violation of his constitutional rights. "Individual liability under § 1983 must be based on personal

involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). A plaintiff must show that each named defendant was personally responsible for a deprivation of his constitutional rights. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Vague and conclusory allegations of personal participation are insufficient to state a claim for relief. *Gray v. Sorrels*, 744 Fed. App'x 563, 568 (10th Cir. 2018). Rather, a plaintiff demonstrates that a defendant personally participated in an alleged violation only if the plaintiff establishes there is an "affirmative link" between the defendant's conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001).

Mr. Cordova fails to allege an affirmative link between Defendant White's actions and any deprivation of his rights. He alleges that Defendant White failed to schedule his medical appointments and failed to take reasonable measures to get him medical care. ECF No. 13, ¶ 50. But he does not allege that Defendant White received or responded to any kites, or otherwise was aware of his requests for medical attention. And to the extent he alleges that White was responsible for overseeing his medical care by nature of her position, such claims fail because an official's supervisory status alone does not create § 1983 liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767-69 (10th Cir. 2013) (a claim of supervisory liability must be supported by allegations that demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind); *Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992). Therefore, Mr. Cordova fails to allege Defendant White personally participated in a deprivation of his constitutional rights, and all claims against her should be dismissed.

**IV.     CDOC Defendants are entitled to qualified immunity.**

Mr. Cordova fails to allege the CDOC Defendants violated a clearly established right to overcome qualified immunity. The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (citation omitted). Qualified immunity is an affirmative defense to a section 1983 lawsuit and provides immunity from the outset. *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). Its purpose is to give government officials "breathing room" to make reasonable but mistaken judgments. *Stanton v. Sims*, 571 U.S. 3, 5 (2013). It applies in "all but the most exceptional cases," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To overcome a defendant's assertion of qualified immunity, the plaintiff must show that (1) the defendant violated the plaintiff's federal constitutional or statutory rights, and (2) the right was clearly established at the time of the violation in the circumstances faced by the defendant. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). If a plaintiff fails to demonstrate either of these two parts, the court must grant a defendant qualified immunity. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

For the reasons stated above, Mr. Cordova has failed to show that the CDOC Defendants violated his federal constitutional or statutory rights. Because he has failed to allege facts against the CDOC Defendants establishing the violation of any constitutional right, he necessarily has

16

failed to allege facts sufficient to establish the violation of a clearly established right. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) ("It is true that if the plaintiff failed to state a claim under Rule 12(b)(6), the government would also be entitled to qualified immunity."). Nor has he cited to any case law from the Tenth Circuit that would put the CDOC Defendants on notice that any of their actions violated a clearly established federal right. Therefore, the CDOC Defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the CDOC Defendants respectfully request that the Court dismiss Mr. Cordova's Amended Complaint.

Respectfully submitted on October 23, 2023,

> PHILIP J. WEISER
> COLORADO ATTORNEY GENERAL
>
> */s/ Christopher Van Hall*
> CHRISTOPHER VAN HALL*
> Assistant Attorney General
> GREGORY R. BUENO*
> Assistant Attorney General
> Civil Litigation & Employment Section
> Colorado Department of Law
> 1300 Broadway, 10th Floor
> Denver, Colorado 80203
> Telephone: 720-508-6563
> E-Mail: Christopher.VanHall@coag.gov
> E-Mail: Gregory.Bueno@coag.gov
> *Attorneys for Defendants Kautz, Carwin, Nira, and White*
> *Counsel of record

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within **CDOC DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)** upon all parties herein by e-filing with the CM/ECF system maintained by the court on October 23, 2023, and by depositing same in the United States mail, postage prepaid, at Denver, Colorado, on October 24, 2023, addressed as follows:

Christopher Cordova #125101　　　　　　*Courtesy copy e-mailed to:*
Sterling Correctional Facility　　　　　　Adrienne Sanchez, CDOC
P.O. Box 6000　　　　　　　　　　　　　Anthony DeCesaro, CDOC
Sterling, CO 80751
*Pro Se*

　　　　　　　　　　　　　　　　　　　　　*/s/ James Mules*