IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00081-PAB-KAS

CHRISTOPHER J. CORDOVA,

      Plaintiff,

v.

TRISHA KAUTZ,
GREG CARWIN,
VICKIE NIRA,
JEREMY LONG, and
NICHOLE WHITE,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendants Trisha Kautz, Greg Carwin, Vickie Nira, and Nichole White's **Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(6)** [#31][1] (the "Motion"). Plaintiff, who proceeds in this matter as a pro se litigant,[2] filed a Response [#36] in opposition to the Motion [#31], and Defendants filed a Reply [#37]. The Motion [#31] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR

---

[1] "[#31]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

72.1(c)(3). *See* [#32]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that the Motion [#31] be **GRANTED**.

## I. Background[3]

At all times relevant to his claims, Plaintiff was incarcerated at the Colorado Department of Corrections ("CDOC") Sterling Correctional Facility ("SCF") in Sterling, Colorado. *Third Am. Compl.* [#13] at 2. In June 2020, Plaintiff was working in the "prison industry shop as an inmate employee" when he allegedly "pulled something in his lower groin area that dropped him to his knees and serious pain shot through his body." *Id.* at ¶ 6. Plaintiff allegedly became very ill and alerted shop supervisors Defendant Carwin as well as three non-parties (T.J. Rittenhouse, Phil McCormick, and Ken Enslow) about his injury. *Id.* Additionally, he informed his team inmate trainer that he was experiencing pain and lightheadedness. *Id.* Plaintiff alleges that he was "told to return to the cell house unit so he could be seen by medical," and once he was at the cell house, he informed staff that he was injured. *Id.* at ¶ 7. He alleges that Defendant Carwin informed SCF medical staff of the incident, but that he was never called up to medical. *Id.*

---

[3] In resolving the Motion [#31], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#13]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, to the extent that Plaintiff raised additional allegations or new claims in his Response [#36], the Court notes that a party may not amend his complaint in a brief. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept. 30, 2020) (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

Around two months later, on August 13, 2020, Plaintiff sent a medical kite[4] requesting to be seen immediately "for serious pain in his lower abdomen and groin area." *Id.* at ¶ 9. Plaintiff alleges that "his name never appeared on the medical appointment list," so he sent another kite on August 15, 2020. *Id.* at ¶¶ 9,10. He was seen on the same day by Defendant Kautz, who he alleges "inappropriately examined him." *Id.* at ¶ 10. Defendant Kautz told Plaintiff she would schedule him for a medical consultation with Denver Health Medical Center and he had that consultation. *Id.*

On September 21, 2020, Plaintiff alleges he sent a follow-up kite to Defendant Kautz "to be properly treated with either a 'CT' Scan or 'MRI'" because of his growing discomfort. *Id.* at ¶ 11. The next day, September 22, 2020, Plaintiff sent another medical kite to Dr. Reichart, who no longer works at SCF and is not a named Defendant. *Id.* at ¶ 12. On March 9, 2021, Plaintiff sent another medical kite to Defendant Kautz requesting an examination and MRI "to view whether or not there has been some scarred tissue in his lower stomach and groin areas." *Id.* at ¶ 13. Defendant Nira, the Health Services Administrator at SCF, received his medical kite and responded on March 10, 2021, letting him know that an outside consultation would be scheduled for a CT scan and MRI. *Id.* at ¶ 14.

Plaintiff received a CT scan at Banner Health of Sterling on April 21, 2021, and on April 29, 2021, he received a report "that he had a massive tear in his lower abdomen that could be a severe hernia." *Id.* at ¶¶ 14,15. On June 10, 2021, Plaintiff allegedly sent another medical kite informing Defendants of his pain and requesting a new scan. *Id.* at

---

[4] A "kite" is a prisoner's written request for services, such as medical care. *See, e.g.*, *Oakley v. Phillips*, No. 15-cv-01004-CMA, 2015 WL 5728734, at *1 n.3 (D. Colo. Sept. 30, 2015).

¶ 18. Plaintiff alleges that Defendant Nira responded, explaining that Plaintiff would need an outside consultation. *Id.* On October 13, 2021, Plaintiff was seen by Defendant Long. *Id.* at ¶ 19. Plaintiff alleges that after examining him, Defendant Long told him that "there was nothing that he could do for him" despite having "Plaintiff's medical records at that time," and that Defendant Long "failed to acknowledge that Plaintiff needed to be seen in an emergency room by a medical specialist due to a life and death situation." *Id.* at ¶ 19.

On November 28, 2021, Plaintiff allegedly sent another medical kite regarding a consultation with an "outside medical Doctor" that "Defendant Kautz . . . supposedly had scheduled[.]" *Id.* at ¶ 20. On January 6, 2022, Plaintiff was scheduled for a follow-up appointment at Banner Health of Sterling where he was told he would need emergency surgery due to "internal tears within the lower GI area." *Id.* at ¶¶ 21-22. However, Plaintiff allegedly needed an MRI before the surgery. *Id.* at ¶ 22. Around two weeks after this exam, Plaintiff sent a medical kite to Defendant Nira asking when he would be scheduled for his MRI. *Id.* at ¶ 22. She never responded. *Id.* On February 23, 2022, Plaintiff sent a kite to be seen by a Physician Assistant named Kevin Allen ("Allen"), a non-party. *Id.* at ¶ 23. Allen told Plaintiff that "they were waiting on March 25, 2022 for a surgeon's referral to urology progress [sic]." *Id.* On June 29, 2022, Plaintiff "sent another medical kite to the SCF medical department requesting a copy of medical records because two previous medical specialists were instructed to review the wrong areas of concern." *Id.* at ¶ 24.

In February 2023, Plaintiff allegedly sent another medical kite to an unnamed provider "complaining about the length of time that it was taking to be seen by a [d]octor to perform a[n] MRI so that [P]laintiff can receive the surgery as request[ed] by Dr. Alzheimer." *Id.* at ¶ 28. Plaintiff further alleges that due to the lack of proper medical care,

his injuries have "develop[ed] into the first stage of *possible* cancer," but he does not allege that he received a cancer diagnosis. *Id.* at ¶ 55 (emphasis added). Additionally, Plaintiff alleges that "Plaintiff's scarred tissue in his lower stomach and groin area has advanced in which he is in pain 24/7." *Id.* at ¶ 56.

Plaintiff alleges that Defendant White "fail[ed] to act and refus[ed] to immediately schedule Plaintiff for medical care or any type of MRI." *Id.* at ¶ 52. He claims that "on numerous occasions [Defendant] White failed to schedule (or to reschedule) Plaintiff for a known serious medical condition[.]" *Id.* at ¶ 50. He vaguely asserts that "Defendant Michelle Brodeur-Chief Executive Officer for Correctional Health Partner (CHP)" and the CDOC denied him surgery "based on policy decisions" which were created "to save money." *Id.* at ¶¶ 54. 55. Ms. Brodeur, however, has not been a defendant since April 27, 2023, when Plaintiff filed the instant Complaint [#13]. *Compare Third Am. Compl.* [#13] at 1 *with Second Am. Compl.* [#10] at 1 (listing Ms. Brodeur as a defendant). Plaintiff also asserts these policy restrictions were put in place by a "Defendant Wasco," who is not otherwise named in this action. *Id.* at ¶ 56.

Plaintiff sues Defendants in their official and individual capacities. *Id.* at 2-3. Plaintiff claims that Defendants acted with deliberate indifference to his medical needs, in violation of his Eighth Amendment rights. *Id.* at ¶¶ 1-2.[5] He alleges that he has exhausted his administrative remedies. *Id.* at 4. Plaintiff seeks "a true and correct diagnos[i]s along

---

[5] Plaintiff's prior Complaints [#1, #5, #10] only asserted claims against Defendants in their individual capacities. *See Compl.* [#1] at 2-3 (checking only individual capacity checkboxes); *First Am. Compl.* [#5] at 2-3 (same); *Second Am. Compl.* [#10] at 2-3 (same). However, in the operative Amended Complaint [#13], Plaintiff checked the boxes for both individual and official capacities. *See Third Am. Compl.* [#13] at 2-3. He also seeks "injunctive relief" in terms of policy revisions, training, and "protect[ing] plaintiff from further abandonment and to be treated by outside medical providers." *Third Am. Compl.* [#13] at 24.

with proper surgery by the Defendant[s] that can only come by way of a[n] MRI." *Id.* at ¶ 34. Additionally, Plaintiff requests issuance of an injunction ordering Defendants to protect him from further harm, implement CDOC policy revisions, and properly train CDOC staff. *Id.* at 24. Plaintiff also seeks a declaratory judgment "that the defendant's policy adherence failures violated [his] Eighth Amendment rights, when they denied medical treatment needs." *Id*. Finally, Plaintiff seeks damages from Defendants in their individual capacities, i.e., "three million dollars per year since 2020." *Id.* at 25.

## II. Standard of Review and Applicable Law

### A.    Rule 12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). In other words, "[a] Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). Because federal courts are tribunals of limited jurisdiction, the Court must establish a statutory basis to exercise jurisdiction. Fed. R. Civ. P. 12(b)(1); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The Court may only exercise jurisdiction "in the presence rather than the absence of statutory authority." *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994) (quoting *Wyeth Lab'ys v. U.S. Dist. Ct.*, 851 F.2d 321, 324 (10th Cir. 1988)). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

"Rule 12(b)(1) challenges may take two different forms." *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff*, 65 F.4th at 507 (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment[.]" *SK Fin. SA*, 126 F.3d at 1275. "In such instances, a court has discretion to consider affidavits and other documents to resolve the jurisdictional question." *Graff*, 65 F.4th at 507 (citing *Holt*, 46 F.3d at 1003).

## B.    Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"

*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . .  [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

**C.    Eighth Amendment**

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). The "deliberate indifference standard lies 'somewhere between the poles of negligence at one end and purpose or knowledge at the other.'" *Est. of Beauford v. Mesa County, Colo.*, 35 F.4th 1248, 1262 (10th Cir. 2022) (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The deliberate indifference standard contains "both an objective and a subjective component." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

8

The objective component requires that the "deprivation is 'sufficiently serious.'" *Sealock*, 218 F.3d at 1209 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

The subjective prong requires the plaintiff to establish that a prison official had a sufficiently culpable state of mind, i.e., that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Est. of Beauford*, 35 F.4th at 1262-63 (quoting *Farmer*, 511 U.S. at 837). Notably, "[d]eliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (citations omitted).  "[I]t is not enough for a prisoner to establish that a prison doctor failed to diagnose or treat a serious medical condition properly, and this is true even if the doctor acted negligently." *Horton v. Ward*, 123 F. App'x 368, 371-72 (10th Cir. 2005) (citing *Sealock*, 218 F.3d at 1211). Moreover, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 107; *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)).

## D.    Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known.'" *Est. of Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). When a defendant asserts qualified immunity, plaintiff must demonstrate "'(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct.'" *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013)). The Court may examine the two prongs of qualified immunity in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III. Analysis

Plaintiff sues Defendants in their individual and official capacities. *Third Am. Compl.* [#13] at 2-3, 7. He seeks an injunction requiring Defendants to: (1) "protect Plaintiff from further abandonment"; (2) have Plaintiff treated by outside medical providers; (3) properly train staff and medical workers to respond correctly in emergency situations; and (4) "implement CDOC policy revisions that provide outside care in urgent cases." *Id.* at 24. He also seeks a judgment declaring that Defendants' failures to adhere to policy violated his Eighth Amendment rights. *Id.* at 25.

### A.    Official Capacity Claims

Defendants did not address Plaintiff's official capacity claims, but the Court finds that they should be dismissed.

Plaintiff proceeds in this matter *in forma pauperis*, pursuant to 28 U.S.C. § 1915. *See Order* [#7]. Under the *in forma pauperis* statute, "the court *shall* dismiss the case at any time if the court determines that" the action "fails to state a claim upon which relief may be granted" or "seeks monetary relief against a defendant who is immune from such

relief." 28 U.S.C. § 1915(e)(2); *see also Denton v. Hernandez*, 504 U.S. 25, 33-34 (1992)

(holding that a district court may dismiss *sua sponte* claims premised on meritless legal

theories); *Whitney v. New Mexico*, 113 F.3d 1170, 1172-73 (10th Cir. 1997) (affirming *sua*

*sponte* dismissal of damages claim against the state as legally frivolous under the *in forma*

*pauperis* statute because of Eleventh Amendment immunity); *Hererra-Zamora v. Crosby*,

No. 18-cv-01913-GPG, 2018 WL 10561432, at *1 (D. Colo. Oct. 19, 2018) (noting a

court's ability to dismiss a claim *sua sponte* under the *in forma pauperis* statute).

Additionally, "[b]ecause Eleventh Amendment immunity is jurisdictional, the Court may

consider it *sua sponte*." *White v. Baldridge*, No. 21-cv-02937-NYW-STV, 2022 WL

17751247, at *7 (D. Colo. Dec. 19, 2022) (adopting magistrate judge's sua sponte

recommendation to dismiss official capacity claims for damages asserted by a plaintiff

proceeding *in forma pauperis*) (quoting *Jud. Watch, Inc. v. Griswold*, 554 F. Supp. 3d

1091, 1100 n.6 (D. Colo. 2021)).

"The Eleventh Amendment generally bars suits against a state in federal court

commenced by citizens of that state or citizens of another state." *Elephant Butte Irrigation*

*Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998). Likewise, the Eleventh

Amendment "generally bars suits brought by individuals against state officials acting in

their official capacities," but it "does not bar a suit against state officials in their official

capacities if it seeks prospective relief for the officials' ongoing violation of federal law."

*Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001). "Because the real party in interest

in an official-capacity suit is the governmental entity and not the named official, 'the

entity's "policy or custom" must have played a part in the violation of federal law.'" *Hafer*

*v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 149, 166)).

To the extent that Plaintiff seeks monetary damages against Defendants in their official capacities, his claims are barred by the Eleventh Amendment. *See, e.g.*, *Amin v. Voigtsberger*, 560 F. App'x 780, 782-83 (10th Cir. 2014) (holding that Colorado and Wyoming officials were entitled to Eleventh Amendment immunity from an inmate's official-capacity claims for money damages); *cf. Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief"). The Eleventh Amendment also bars his declaratory judgment claims to the extent he seeks "a declaration that a state officer has violated [his] federal rights in the past." *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citing *Puerto Rico Aqueduct v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

Because Plaintiff's monetary and retrospective official-capacity claims are barred by Eleventh Amendment immunity, the Court **recommends** that his official-capacity claims for monetary relief and retrospective declaratory relief be **dismissed without prejudice** pursuant to 28 U.S.C. § 1915(e)(2). *See Rural Water Sewer & Solid Waste Mgmt. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) (stating that "a dismissal on sovereign immunity grounds . . . must be without prejudice").

While sovereign immunity does not bar a plaintiff's § 1983 claims for prospective injunctive relief, *White v. State of Colorado*, 82 F.3d 364, 366 (10th Cir. 1996), Plaintiff must plausibly allege an Eighth Amendment violation to establish an entitlement to injunctive relief. *See Abu-Fakher v. Bode*, 175 F. App'x 179, 181 (10th Cir. Mar. 16, 2006). As discussed below, the Court finds that Plaintiff has not plausibly alleged an Eighth Amendment violation; therefore, Plaintiff's claims for injunctive relief must be dismissed.

*See Noe v. United States Gov't*, No. 1:21-cv-01589-CNS-STV, 2023 WL 179929, at *4 (D. Colo. Jan. 13, 2023) (dismissing official-capacity injunctive relief claims without prejudice for failure to state an Eighth Amendment claim); *Blevins v. Reid*, No. 06-cv-00969-MSK-KMT, 2008 WL 2428941, at *11 (D. Colo. June 12, 2008) (dismissing injunctive relief claims tied to dismissed constitutional claims). Accordingly, the Court **recommends** that Plaintiff's official-capacity claims for injunctive relief be **dismissed without prejudice**.

**B.    Individual Capacity Claims**

Defendants seek dismissal on three grounds: (1) qualified immunity; (2) failure to state a claim; and (3) statute of limitations. *Motion* [#31] at 5-17. In support of qualified immunity and failure to state a claim, Defendants argue that Plaintiff "has failed to show that the CDOC Defendants violated his federal constitutional or statutory rights" because "there are no factual allegations in the Amended Complaint [#13] to suggest that the CDOC Defendants knew of and consciously disregarded a sufficiently serious medical condition." *Id.* at 11-12, 16. Defendants also assert that Plaintiff merely disagrees with the nature of the diagnosis and treatment received. *See id.* at 12. Regarding qualified immunity, Defendants argue that Plaintiff "fails to cite to any Tenth Circuit case law that would put [Defendants] on notice [that] their actions violated a clearly established constitutional right[.]" *Reply* [#37] at 9; *see also Motion* [#31] at 17. As discussed below, the Court finds that Plaintiff has filed to satisfy the subjective prong of his deliberate indifference claim as to any of the Defendants and, therefore, Defendants are entitled to qualified immunity. Because Defendants are entitled to qualified immunity, the Court need not address Defendants' argument that Plaintiff's claims are time-barred by the statute of

limitations or Plaintiff's "continuing violation" argument. *See Motion* [#31] at 5-10; *Response* [#36] at 3-5; *Reply* [#37] at 3-6.

### 1.    Defendant Carwin

Plaintiff alleges that after injuring himself while at work in the industry shop in June 2020, "he reported his injury to" Defendant Carwin and other industry shop supervisors and "inform[ed] his team inmate trainer [*i.e.*, someone other than Defendant Carwin] that he had injured himself and was experiencing light headedness and pain within his lower groin and 'G.I.' around of [his] testicle area." *Third Am. Compl.* [#13], ¶ 6. In particular, he alleges that Defendant Carwin (and the other non-party industry shop supervisors) "had actual knowledge that Plaintiff had injured himself while performing his work duties," and as a supervisor, Defendant Carwin "failed to provide any type of adequate emergency medical attention for an on the job injury [and] [f]ail[ed] to summon appropriate medical treatment[.]" *Id*. ¶ 43. Plaintiff further alleges that Defendant Carwin and the other industry shop supervisors "[were] responsible to make sure that Plaintiff received the poplar [sic] medical care and [were] responsible for filing an incident report and calling for assistance through medical so Plaintiff could obtain the needed treatment to correct the injury." *Id*. Plaintiff also alleges that neither Defendant Carwin nor the other supervisors "arrange[d] for [him] to be called or seen by SCF medical department." *Id*. ¶ 44. In sum, Plaintiff's deliberate indifference claim rests on Defendant Carwin's purported role as a gatekeeper to medical treatment. *See Response* [#36] at 7-8.

"A prison official can incur personal liability for deliberate indifference to a prisoner's medical needs." *Walker v. Hickenlooper*, 627 F. App'x 710, 717 (10th Cir. 2015) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). Deliberate indifference

may exist where "a prison official fails as a 'gatekeeper' by preventing a prisoner's access to further medical care." *Id*.; *see also McGee v. Nira*, No. 1:22-cv-00936-CNS-SBP, 2024 WL 3446908, at *5 (D. Colo. Mar. 5, 2024) ("'Gatekeeper' liability may be imposed only when an officer deliberately prevents a prisoner from accessing medical care or interferes with care once it is prescribed.") (citing *Estelle*, 429 U.S. at 104-05; *Sealock*, 218 F.3d at 1210); *Walker v. Stop*, No. 17-3176-SAC, 2018 WL 2722790, at *3 (D. Kan. June 6, 2018) ("A gatekeeper may manifest deliberate indifference by intentionally denying or delaying access to medical care.") (citing *Mata*, 427 F.3d at 751). "[G]atekeeper liability requires proof that the need for further treatment is 'obvious.'" *Id*. at 718 (citing *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)). "The Tenth Circuit has recognized three types of conduct which may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition; (2) a prison official preventing an inmate from receiving medical treatment; or (3) a prison official denying a prisoner access to medical personnel capable of evaluating the inmate's condition." *Tivis v. Dowis*, No. 11-cv-02050-PAB-KMT, 2014 WL 7437661, at *3 (D. Colo. Dec. 29, 2014) (citing *Sealock*, 218 F.3d at 1211). Gatekeeper claims often involve non-medical personnel who fail to seek medical assistance on a prisoner's behalf. *See Oakley v. Phillips*, No. 15-cv-01004-CMA, 2015 WL 5728734, at *8 (D. Colo. Sept. 30, 2015).

Here, Plaintiff's claim against Defendant Carwin rests on the second or third type of gatekeeper liability. Plaintiff's Complaint contains vague allegations as to what he conveyed to Defendant Carwin about his on-the-job injury. At most, Plaintiff "reported his injury" to Defendant Carwin but Plaintiff fails to allege any facts concerning what he reported or what Defendant Carwin observed. The Complaint lacks plausible allegations

that Defendant Carwin knew the severity of Plaintiff's injury, knew that emergency medical care was necessary, and deliberately disregarded those risks. *Third Am. Compl.* [#13] at 9. Plaintiff's more specific allegations concern the team inmate trainer whom Plaintiff informed of his injury, light-headedness, and pain in his groin area. *Third Am. Compl.* [#13], ¶ 6. These allegations fail to allege plausibly that Defendant Carwin (1) knew of a substantial risk of serious harm posed to Plaintiff, or (2) disregarded that risk. *Farmer*, 511 U.S. at 837. Merely reporting an injury does not render obvious a need for medical treatment, much less immediate or emergency medical treatment. *Cf. Walker*, 2018 WL 2722790, at *3, *6 (dismissing gatekeeper claim against non-medical defendants where the plaintiff merely alleged that the defendants witnessed his condition and were involved in the grievance process, but neither alleged an emergency situation nor that the "defendants were aware of a substantial risk that a delay in treatment would cause [the] plaintiff to suffer serious harm."; *Tivis*, 2014 WL 7437661, at *3 (adopting recommendation to dismiss gatekeeper-based Eighth Amendment claim against a prison official who received the plaintiff's grievance about hip pain because the plaintiff failed to allege that the grievances explained a doctor's "recommendation that the plaintiff needed surgery" or that the defendant "was otherwise aware of this recommendation.").

In *Walker v. Hickenlooper*, the Tenth Circuit reviewed the district court's dismissal of an inmate plaintiff's claims, which included a deliberate indifference claim against several non-medical prison officials. The *Walker* plaintiff claimed that the defendants "acted with deliberate indifference as 'gatekeepers' by disallowing medical care even though they knew of the health risks from drinking contaminated water." *Walker*, 627 F. App'x at 718. The Tenth Circuit affirmed dismissal because the complaint did "not suggest

that [the plaintiff] made his symptoms known" to prison officials, *see* 627 F. App'x at 718.
Here, Plaintiff's complaint contains similar deficiencies.

Plaintiff's claim against Defendant Carwin is also deficient to the extent it arises
from a purported failure to follow-up with SCF medical to ensure Plaintiff was seen by
medical staff. *See Third Am. Compl.* [#13], ¶ 7 (alleging that Defendant Carwin "notified
SCF medical of the incident and Plaintiff needed medical attention. The plaintiff was never
called up to SCF medical due to the emergency."); *Tivis*, 2014 WL 7437661, at *4
(adopting recommendation to dismiss gatekeeper-premised deliberate indifference claim
because the allegations failed to "support a finding that [the defendant's] onetime failure
to check on the scheduling . . . constitutes the 'extraordinary degree of neglect' that" the
subjective component of a deliberate indifference claim requires).

Simply put, even if Plaintiff's injury satisfies the objective component of a deliberate
indifference claim[6], Plaintiff fails to satisfy the subjective component by plausibly alleging
that Defendant Carwin acted with a "sufficiently culpable state of mind" because he knew
of and disregarded an excessive risk to Plaintiff's health or safety. *Farmer*, 511 U.S. at
834, 837. The subjective component requires "an *extraordinary* degree of neglect." *Tivis*,
2014 WL 7437661 at *3 (quoting *Self*, 439 F.3d at 1232) (emphasis added). The Court
has "no reason to believe that (1) [Defendant Carwin] played a role in determining whether

---

[6] For this Recommendation, the Court assumes without deciding that Plaintiff's hernia is a
sufficiently serious medical need and, therefore, satisfies the objective prong of a deliberate
indifference claim. *See McDiffett v. Jackson*, No. 5:17-3037-JAR-JPO, 2020 WL 599541, at *4
(D. Kan. Feb. 7, 2020) (assuming without deciding that the plaintiff's "hernia-related issues were
sufficiently serious medical needs"); *Roudybush v. Kansas*, No. 17-2303-CM, 2017 WL 3232957,
at *4 (D. Kan. July 31, 2017) (same); *cf. Brown v. Coleman*, No. 94-7183, 1995 WL 409351, at *1
(10th Cir. July 12, 1995) (noting that whether a plaintiff's "hernia problem was sufficiently serious
that surgery was mandated is a fact question that cannot be resolved solely on the basis of the
pleadings").

[Plaintiff] needed further medical care or (2) [Plaintiff's] need for further medical treatment would have been obvious to [Defendant Carwin]. *Walker*, 627 F. App'x at 718.

In sum, Plaintiff has failed to allege plausibly that Defendant Carwin knew that Plaintiff's June 2020 injury posed a significant risk to his health or that Defendant Carwin deliberately disregarded that risk. *Id*. (affirming dismissal of deliberate indifference claim against non-medical prison officials based on their alleged gatekeeper roles). Because Plaintiff failed to state a claim that Defendant Carwin violated his constitutional rights, Defendant Carwin is entitled to qualified immunity. *See Est. of Booker*, 745 F.3d at 411. Accordingly, the Court **recommends** that the claims against Defendant Carwin in his individual capacity be **dismissed without prejudice**. *See Wabuyabo v. Correct Care Sols.*, 723 F. App'x 642, 644 (10th Cir. 2018) (affirming dismissal without prejudice of the plaintiff's failure to state an Eighth Amendment claim).

## 2.    Defendant Kautz

Plaintiff alleges that on August 15, 2020, Defendant Kautz acted with deliberate indifference when she "inappropriately" examined him and, on March 9, 2021, when she failed to immediately schedule him for an MRI and examination in response to his medical kite requesting an MRI. *Third Am. Compl.* [#13] at ¶¶ 10-11, 13. He also alleges that, on an unspecified date, Defendant Kautz "schedule[d] him for a medical consultation with Denver Health instead of ordering [him] to be immediately transport[ed] to the Sterling Medical Center to be seen for his injuries." *Id*. at ¶¶ 46-47. He further claims that "Defendant Kautz failed to have [him] transferred to a medical center based on an emergency to be seen for internal injuries due to and [sic] on the job accident." *Id*. at ¶ 48. Additionally, Plaintiff claims that he informed Defendant Kautz "on several occasions"

that he "was suffering severe pain throughout his abdominal." *Id*. at ¶ 49. He claims that his medical records rendered clear "that [he] urgently needed . . . to receive emergency surgery." *Id*. Plaintiff argues that Defendant Kautz failed to provide medical care in her gatekeeper role. *Response* [#36] at 7-8.

The Court finds these allegations fail to allege plausibly that Defendant Kautz was deliberately indifferent to his serious medical needs. First, Plaintiff's allegation that Defendant Kautz "inappropriately examined him" in August 2020 is conclusory; he does not explain how the examination was inappropriate, and the Court need not accept this allegation as true. *Third Am. Compl.* [#13] at ¶ 10; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Second, Plaintiff's allegation that his medical records clearly showed that he "urgently needed" emergency surgery is also conclusory. *See Third Am. Compl.* [#13] at ¶ 49. The Complaint contains no allegations as to why or how those medical records made such a clear showing or how, based on those medical records, Defendant Kautz knew or should have known of that need. For example, Plaintiff does not allege that the medical records showed that his hernia was strangulated. *See Karsten v. Davis*, No. 12-cv-02108-MSK-KLM, 2013 WL 2120635, at *13 (D. Colo. Apr. 26, 2013)[7] (noting recognized appropriateness of delaying surgery for non-strangulated hernia and recommending dismissal of deliberate indifference claim) (citing *Jackson v. Jackson*, 456 F. App'x 813, 814-15 (11th Cir. 2012) (noting that doctors "common[ly] . . . postpone surgery until a hernia becomes strangulated"); *Winslow v. Prison Health Servs.*, 406 F.

---

[7] Affirmed and adopted by 2013 WL 2120632 (D. Colo. May 15, 2013).

App'x 671, 674-75 (3d. 2011) (noting, "the standard treatment for an inguinal hernia was non-surgical"); *Clark v. Adams*, 233 F. App'x 400, 401 (5th Cir. 2007) (per curiam); *Denmark-Wagner v. Correct Care Sols.*, No. 12-3169-SAC, 2013 WL 161192, at *2 (D. Kan. Jan. 15, 2013) (finding that the plaintiff's complaints about receiving Tylenol and a hernia belt truss and his "bald allegation—that surgery is the appropriate medical standard and proscribed treatment—is insufficient to establish that the treatment being provided is constitutionally inadequate"; at most, the plaintiff states a medical negligence claim).

Third, Plaintiff offers nothing more than conclusory allegations that Defendant Kautz disregarded his "urgent[ ]" need for "emergency medical care and that his condition was worsening[.]" *Third Am. Compl.* [#13] at ¶ 47. The Complaint [#13] contains no allegations to support Plaintiff's conclusions. According to the Complaint, Defendant Kautz did not ignore Plaintiff's reported symptoms of pain; rather, she gave Plaintiff Tylenol to help manage that pain while Plaintiff awaited a consultation with Denver Health that Defendant Kautz scheduled. *Id.* at ¶¶ 46-67. Additionally, Defendant Kautz scheduled Plaintiff's Denver Health consultation, which belies any contention that she failed to fulfill her gatekeeper role. While a liberal construction of Plaintiff's allegations suggests that Defendant Kautz-related delays in care have caused him to "suffer from organ failure and damage," *id.* at ¶ 48, the Complaint contains no allegations to support Plaintiff's assertion that his organs have been damaged and are failing. *Cf. Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (stating that a "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.") (internal quotation marks and citation omitted).

While Plaintiff complains that that he sent kites to Defendant Kautz on September 21, 2020, and March 9, 2021, requesting a CT scan or MRI "because of the growing discomfort" and "to view whether or not there has been some scarred tissue" but "nothing was scheduled immediately, *id*. at ¶¶ 11, 13, Plaintiff is not constitutionally entitled to his preferred form of treatment according to his preferred timeline. *See Perkins*, 165 F.3d at 811; *Onodera v. Dowis*, No. 10-cv-02303-PAB-KLM, 2011 WL 3666748, at *4 (D. Colo. June 6, 2011) ("a prisoner does not have a valid claim of deliberate indifference simply because he was denied 'a particular course of treatment' that he desired") (citing *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006)); *see also Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (noting that "a mere difference of opinion between the prison's medical staff and the inmate as to the . . treatment which the inmate receives does not support [an Eighth Amendment claim]"). Moreover, any decision by Defendant Kautz not to order a CT scan or MRI "does not represent cruel and unusual punishment[;] [a]t most it is medical malpractice and . . . the proper forum is the state court[.]" *Estelle*, 429 U.S. at 107 (discussing decision not to order an X-ray); *Ankeney v. Hartley*, No. 09-cv-02085-CMA-MJW, 2010 WL 2004778, at *4 (D. Colo. May 19, 2010) (concluding that failure to order an MRI did not support an Eighth Amendment claim and adopting magistrate judge recommendation to dismiss claim).

In sum, Plaintiff does not plausibly allege that Defendant Kautz's actions demonstrated "obduracy and wantonness . . . that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Plaintiff acknowledges that Defendant Kautz scheduled him for a consultation with Denver Health Medical after she examined him in response to an August 15, 2020 medical kite.

*Third Am. Compl.* [#13] at ¶ 10. He also acknowledges that he was seen by a provider at Denver Health. *Id.* Plaintiff's assertion that his condition warranted emergency surgery which he did not receive does not support an Eighth Amendment violation. *See Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (noting that a "prisoner's right is to medical care[,] not to the type or scope of medical care which he personally desires"). Because Plaintiff has failed to state a claim that Defendant Kautz violated his Eighth Amendment rights, Defendant Kautz is entitled to qualified immunity. Accordingly, the Court **recommends** that the claims against Defendant Kautz be **dismissed without prejudice**. *See Wabuyabo*, 723 F. App'x at 644.

### 3.    Defendant Nira

Plaintiff argues that Defendant Nira failed to provide medical care in her gatekeeper role. *Response* [#36] at 7. Plaintiff alleges that Defendant Nira, the Health Services Administrator at SCF, "received a medical kite from the Plaintiff who then responded informing him on March 10, 2021 that an outside consultation would be scheduled to get him a CT [s]can and an MRI." *Third Am. Compl.* [#13] at 3, 11, ¶ 14. However, Plaintiff admits that, "[o]n April 21, 2021," he "was transported down to the Banner Health of Sterling and a CT scan was performed." *Id.* at ¶ 14. Thus, Plaintiff fails to allege that Defendant Nira failed as a gatekeeper.

Plaintiff also alleges that Defendant Nira acted with deliberate indifference in June 2021 when she notified him that "he would need to get an outside consultation to consider his medical condition. *Id.* at ¶ 18. Plaintiff, however, does not allege that Defendant Nira failed to schedule him for an outside consultation or otherwise interfered with his ability to have that consultation. Moreover, elsewhere in the Complaint, Plaintiff acknowledges

that he obtained outside consultations. *See id.* at ¶ 10 (discussing undated medical consultation oat Denver Health Medical Center), ¶ 14 (discussing CT scan performed at Banner Health of Sterling), ¶ 21 (noting undated second consultation by Dr. Alzheimer at Banner Health).

Plaintiff further alleges that about two weeks after he had a surgical consultation with a Dr. Alzheimer, he sent a medical kite to Defendant Nira asking if "he was being scheduled for MRI or CAT Scan in preparation for surgery," which received no response. *Id.* at ¶ 22. Defendant Nira's failure to respond to Plaintiff's January 2022 medical kite does not, by itself, infer that she was "intentionally denying or delaying access to medical care." *Mata*, 427 F.3d at 751 (quoting *Estelle*, 429 U.S. at 104-05). First, Plaintiff does not plausibly allege that Defendant Nira's failure to respond to a single kite "prevent[ed] him from receiving treatment or den[ied] him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211. Just weeks after Defendant Nira allegedly ignored his kite, on February 23, 2022, Plaintiff sent another medical kite to an unidentified recipient and was promptly seen by a medical provider. *Third Am. Compl.* [#13] at ¶ 23. Second, even if Defendant Nira knew of Plaintiff's serious injury, Plaintiff fails to allege facts showing that Defendant Nira deliberately disregarded the risk of harm to him. The failure to respond to a single kite suggests, at worst, mere negligence, which is insufficient to show deliberate indifference. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003); *Farmer*, 511 U.S. at 836 (stating that deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other"). Plaintiff has failed to state a claim that Defendant Nira was deliberately indifferent to his medical needs in January 2022.

In sum, Plaintiff has failed to allege plausibly that Defendant Nira deliberately disregarded a risk of serious harm or that her conduct prevented him from receiving treatment or denied him access to medical personnel. Because Plaintiff fails to state a claim that Defendant Nira violated his constitutional rights, Defendant Nira is entitled to qualified immunity from liability for civil damages. Accordingly, the Court **recommends** that the claims against Defendant Nira be **dismissed without prejudice**. *See Wabuyabo*, 723 F. App'x at 644.

### 4.    Defendant White

Plaintiff argues that Defendant White failed to provide medical care in her gatekeeper role. *Response* [#36] at 7-8. Defendant White is the "[m]edical appointment scheduler for SCF." *Third Am. Compl.*, [#13] at 7. Plaintiff alleges that "[o]n numerous occasions White failed to schedule (or to reschedule) Plaintiff for a known serious medical condition, ignoring his multiple pleas for help and his medical emergency without cause" and "failed to take reasonable measures to abate the substantial risk of internal body damage [sic] a known medical condition, failing to act or to intervene to have Plaintiff seen by medical personnel." *Id*. at ¶ 50. Plaintiff posits that Defendant White's "failure to act and refus[al] to immediately schedule Plaintiff for medical care or any type of MRI . . . denied [him] a life saving [sic] surgery resulting in Plaintiff's exposure to prolonged and extreme ongoing pain," which has "contribut[ed] to the progression of symptoms [sic] serious damages." *Id*. at ¶ 52. Plaintiff further claims that Defendant White violated his Eighth Amendment right "by failing to schedule and by failing to notify his provider or follow a medical [d]octor's orders of emergency or urgent care[.]" *Id.* at ¶ 53; *see also id*.

at ¶ 57 (alleging deliberate indifference "by intentionally refusing to save his life by undergoing an emergency surgery.").

"[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Plaintiff's allegations against Defendant White are the kind of "naked assertions devoid of further factual enhancement," that fail to state a claim. *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (internal quotation marks omitted). He alleges that Defendant White repeatedly failed to schedule or reschedule necessary medical care, yet he admits that he was seen by several different providers, both inside and outside the prison, from June 2020 through at least February 2022. *Third Am. Compl.* [#13] at 10-13. Plaintiff's naked assertions do not plausibly allege that Defendant White "prevent[ed] him from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211. Plaintiff does not allege any facts that would show Defendant White was aware of Plaintiff's requests for medical scheduling or that she disregarded such requests—he simply alleges it in conclusory fashion. Without any supporting factual averments, Plaintiff has failed to plausibly allege that Defendant White was deliberately indifferent to his medical needs.

In sum, because Plaintiff has failed to state a claim that Defendant White violated his constitutional rights, Defendant White is entitled to qualified immunity. Accordingly, the Court **recommends** that the claims against Defendant White be **dismissed without prejudice**. *See Wabuyabo*, 723 F. App'x at 644.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#31] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's individual-capacity claims against Defendants Kautz, Carwin, Nira, and White be **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's official-capacity claims against all Defendants, to the extent he seeks monetary and retrospective declaratory relief, be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

IT IS FURTHER **RECOMMENDED** that Plaintiff's official-capacity claims against all Defendants, to the extent he seeks injunctive relief, be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915(e)(2), for failure to state a claim.[8]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the

---

[8] If this Recommendation is adopted in full, the only claims remaining will be Plaintiff's personal-capacity claims against Defendant Long, who has not been served. *See Order to Show Cause* [#41] at 2 (ordering Plaintiff to show cause why Defendant Long should not be dismissed).

district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 12, 2024                          BY THE COURT:


                                                Kathryn A. Starnella
                                                United States Magistrate Judge